BILL LOCKYER Attorney General ANTHONY S. DA VIGO Deputy Attorney General
THE HONORABLE JACKIE SPEIER, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May the city council of a general law city that provides medical benefits to its members while in office, and which has never continued such benefits to its members after leaving office, now provide for the continuation of such benefits for currently serving members after they leave office?
 CONCLUSION
The city council of a general law city that provides medical benefits to its members while in office, and which has never continued such benefits to its members after leaving office, may now provide for the continuation of such benefits for its currently serving members after they leave office only if the recipients participate on a self-pay basis.
 ANALYSIS
The Legislature has enacted a comprehensive statutory scheme (Gov. Code, §§ 53200 — 53210)[1] authorizing the legislative bodies of local agencies, including cities, to provide health and welfare benefits to their officers and employees. (See 83 Ops.Cal.Atty.Gen. 14 (2000); 81 Ops.Cal.Atty.Gen. 218 (1998).) The question presented for resolution concerns whether a city council may provide medical benefits for current council members after they leave office if the city has not done so in the past. We conclude that a city council may do so on a self-pay basis.
Section 53200, subdivision (d), provides:
 "`Health and welfare benefit' means any one or more of the following: hospital, medical, surgical, disability, legal expense or related benefits including, but not limited to, medical, dental, life, legal expense, and income protection insurance or benefits, whether provided on an insurance or a service basis, and includes group life insurance as defined in subdivision (b) of this section."
Section 53201 states in part:
 "(a) The legislative body of a local agency, subject to conditions as may be established by it, may provide for any health and welfare benefits for the benefit of its officers, employees, retired employees, and retired members of the legislative body, as provided in subdivision (b), who elect to accept the benefits and who authorize the local agency to deduct the premiums, dues, or other charges from their compensation, to the extent that the charges are not covered by payments from funds under the jurisdiction of the local agency as permitted by Section 53205.
 "(b) The legislative body of a local agency may also provide for the continuation of any health and welfare benefits for the benefit of former elective members of the legislative body who (1) served in office after January 1, 1981, and whose total service at the time of termination is not less than 12 years, or (2) have completed one or more terms of office, but less than 12 years, and who agree to and do pay the full costs of the health and welfare benefits.
 "(c)(1) Notwithstanding any other provision of law, a legislative body of a local agency that provided benefits pursuant to subdivision (b) to former elective members of the legislative body [before][2] January 1, 1995, shall not provide those benefits to any person first elected to a term of office that begins on or after January 1, 1995, unless the recipient participates on a self-pay basis, as provided in subdivision (b).
 "(2) A legislative body of a local agency that did not provide benefits pursuant to subdivision (b) to former elective members of the legislative body before January 1, 1994, shall not provide those benefits to former elective members of the legislative body after January 1, 1994, unless the recipients participate on a self-pay basis.
 "(3) A legislative body of a local agency that provided benefits pursuant to subdivision (b) to former elective members of the legislative body before January 1, 1994, may continue to provide those benefits to those members who received those benefits before January 1, 1994."
Section 53205, in turn, provides in part:
 "From funds under its jurisdiction, the legislative body may authorize payment of all, or such portion as it may elect, of the premiums, dues, or other charges for health and welfare benefits of officers, employees, retired employees, former elective members specified in subdivision (b) of Section 53201, and retired members of the legislative body subject to its jurisdiction."
In addition to these provisions, the Legislature requires that any plan adopted to implement the purposes of this statutory scheme must provide benefits for large numbers of employees. (§ 53202.3.) Also, a member of a legislative body may participate in a plan of health and welfare benefits notwithstanding statutory limitations upon compensation (e.g., § 36516) or statutory restrictions relating to proscribed financial interests in contracts entered into by the local agency (e.g., § 1090). (§ 53208.)
The key provision requiring our analysis is section 53201, subdivision (c)(2). It provides in effect that a local agency that did not provide medical benefits for its former elective members before January 1, 1994, may not provide those benefits to former elective members after January 1, 1994, unless the recipients participate on a self-pay basis. Subdivision (c)(2) does not expressly refer to "continuing" benefits. It has been suggested that the prohibition of section 53201, subdivision (c)(2), has no application to currently serving members but only "former" members at the time of establishing the benefits plan. If that were so, currently serving members could "continue" to receive paid health benefits pursuant to section 53201, subdivision (b), when they leave office after serving 12 years.[3]
In 83 Ops.Cal.Atty.Gen. 14, supra, we examined the legislative history of section 53201. We observed:
 "Section 53201 was enacted in 1949 (Stats. 1949, ch. 81, § 1), initially allowing current officers and employees that opportunity to purchase their own group insurance. In 1957 (Stats. 1957, ch. 944, § 2), the Legislature authorized local agencies to pay for the insurance if they so chose, and expanded the coverage to health and welfare benefits generally. In 1963, `retired employees' (Stats. 1963, ch. 1773, § 1) were added to the coverage, and `retired members of the legislative body' were added in 1979 (Stats. 1979, ch. 415, § 1).
 "In a 1979 opinion (62 Ops.Cal.Atty.Gen. 631 (1979)), we interpreted the phrase `retired members of the legislative body' to mean only those officers who were part of a pension plan of the local agency. In apparent response to our opinion, the Legislature amended section 53201 (Stats. 1980, ch. 129, § 1) by adding subdivision (b) to cover `former elective members of the legislative body . . . whose total service . . . exceeds 12 years.' In 1985 (Stats. 1985, ch. 141, § 1), former elective members serving less than 12 years were included-if they paid the premiums themselves.
 "The last relevant change occurred in 1994 (Stats. 1994, ch. 615, § 1), when subdivision (c) was added essentially in its present form. . . ." (Id. at p. 16.)
In our 2000 opinion, we noted that subdivision (c)(2) of section53201 would be applicable to city council members serving at the time of adopting the benefits plan. "[W]hat the city council did . . . [providing paid health benefits for current council members upon leaving office] was prohibited by subdivision (c)(2). . . ." (Ibid.)
While it was unnecessary to fully analyze the provisions of section53201, subdivision (c), in our 2000 opinion, we find that paid medical benefits are authorized for city council members upon leaving office after serving 12 years (§§ 53201, subd. (b); 53205) unless prohibited under the terms of subdivision (c) of the statute. Reading the three subsections of subdivision (c) as a whole, it is apparent that when currently serving council members leave office, they become "former elective members" for purposes of subdivision (c)(2). If benefits for former members were not provided before January 1, 1994, subdivision (c)(2) requires that "the recipients participate on a self-pay basis."
Hence, as a matter of statutory interpretation, subdivision (c)(2) of section 53201 refers to benefits provided "pursuant to subdivision (b)" and prohibits "those benefits." The only benefits specified in subdivision (b) of section 53201 are continuing benefits for currently serving members, those that are "for the continuation of any health and welfare benefits." The words "shall not provide those benefits" contained in subdivision (c)(2) are not limited in any respect, and necessarily include any benefits that would be continued or conferred for the first time upon currently serving members when they leave office. Any "current" members will become "former" members for purposes of receiving "continuing benefits." The limitation of subdivision (c)(2) of section 53201 thus applies equally to those currently serving in office and those who are no longer in office at the time of establishing the benefits plan.[4]
It is concluded that the city council of a general law city that provides medical
benefits to its members while in office, and which has never continued such benefits to its members after leaving office, may now provide for the continuation of such benefits for currently serving members after they leave office only if the recipients participate on a self-pay basis.
[1] All references hereafter to the Government Code are by section number only.
[2] The word "before" was inadvertently omitted from the 1995 amendment of section 53201, which substituted "January 1, 1995" for "before the effective date of Senate Bill 1893 of the 1993-94 Regular Session of the Legislature," and deleted "or was fully vested prior to January 1, 1995" following the words "self-pay basis." (Stats. 1995, ch. 529, § 5.) Inasmuch as the statutory meaning is contextually apparent, and the amendment is described in the Legislative Counsel's Digest as being only technical in nature, we may appropriately insert the word "before" where indicated.
[3] Subdivisions (c)(1) and (c)(3) of section 53201 would not be applicable in the circumstances presented since no former members had previously received health benefits.
[4] "When construing a statute, we must `ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (Wilcox v. Birtwhistle (1999) 21 Cal.4th 973, 977.) "`Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and common sense meaning. [Citations.]'" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 633.) "`Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.'" (Woods v. Young (1991)53 Cal.3d 315, 323.)